**SUTTON FUNDING, L.L.C., Appellee,**

v.

**HERRES, Appellant, et al.**

[Cite as *Sutton Funding, L.L.C. v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23625.

Decided Aug. 6, 2010.

688

Kimberlee S. Rohr and Peter Vance, for appellee.

Don A. Little, for appellant.

FROELICH, Judge.

{¶ 1} Mark Herres appeals from a judgment of the Montgomery County Court of Common Pleas, which dismissed his counterclaim and granted summary judgment to Sutton Funding, L.L.C., on its foreclosure claim. For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 2} On April 19, 2007, Mark Herres borrowed $250,750 from EquiFirst Corporation and executed an adjustable-rate note in favor of EquiFirst for that amount. The note indicated that Herres would make monthly payments to HomEq Servicing, P.O. Box 79230, City of Industry, California, 91716. Herres's monthly payments of $2,108.45 were to begin on June 1, 2007.

{¶ 3} On the same date that Herres executed the note, Herres also executed a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for EquiFirst and EquiFirst's successors and assigns. The mortgage secured payment of the note with the real property located at 300 Pauly Drive in Clayton, Ohio. Paragraph 20 of the mortgage informed Herres that the note, or a partial interest in the note, together with the mortgage, could be sold one or more times without prior notice to him and that these sales might result in a change of the loan servicer, i.e., the entity that collects his monthly payments; Herres would receive a written notice if there were any change in the loan servicer. The mortgage further stated that if the note were sold and the loan continued to be serviced by a loan servicer, the loan-servicing responsibilities would remain with the loan servicer and would not be assumed by the note's purchaser.

{¶ 4} The portion of the mortgage discussing transfer of rights in the property indicates that Herres "understands and agrees that MERS holds only legal title

to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." The mortgage was recorded in the Montgomery County Recorder's office on May 22, 2007.

{¶ 5} In his verified memorandum in opposition to summary judgment, Herres states that he was informed at closing that he would receive a welcoming package and payment book with instructions regarding who was to receive payments. Herres did not receive that information. After 30 days, Herres "called Select Mortgage Group who handled the original note, and inquired as to the status of this matter. He was informed at that time that the note and mortgage had been sold." [1]

{¶ 6} Herres failed to make payments in June and July 2007, as required by the note and the mortgage. On July 17, 2007, HomEq sent correspondence to Herres informing him that he was in default of the note and the mortgage, that HomEq might accelerate the maturity date of his loan, and that in order to avoid further action, full and timely payment of $4,427.74 had to be received by HomEq on or before August 21, 2007. The letter requested that remittance be sent to HomEq at P.O. Box 70829, Charlotte, North Carolina, 28272–0829. The letter listed the current creditor and owner as Sutton Funding.

{¶ 7} Herres states that he also received a telephone call from HomEq requesting immediate payment; Herres informed the caller that he did not know who HomEq was (despite the fact that HomEq was listed as the payee on the note) and that he needed to see documentation that the note and mortgage had been assigned to HomEq and/or Sutton Funding. Herres indicated to HomEq that he would not make a payment "over the telephone at this time." Herres states that he "believed it would be foolish to make a payment to someone who he had never heard of without any proof that it was, in fact, the new holder of the note and mortgage."

{¶ 8} On July 20, 2007, HomEq received payment from Herres in the amount of $4,216.90 (the sum of two regular monthly payments), but the check was returned for insufficient funds. Herres made a subsequent payment of $4,216.90 on September 5, 2007, and this check cleared.

---

1. Herres does not explain Select Mortgage Group's involvement in this lending transaction. Herres's statement suggests that he refinanced his home with funds borrowed from EquiFirst and paid off an "original" note involving Select Mortgage Group. However, based on the record, we see no basis for Herres to have called Select Mortgage Group regarding the note in favor of EquiFirst, and we can only speculate that a refinance had occurred.

{¶ 9} On September 17, 2007, HomEq again sent a letter to Herres, informing him that he was in default as of August 1, 2007, and telling him that HomEq might accelerate the maturity date of his loan and that in order to avoid further action, full and timely payment of $4,823.16 had to be received by HomEq on or before October 22, 2007. The letter requested that remittance be sent to HomEq at P.O. Box 70830, Charlotte, North Carolina, 28272–0830. The letter again indicated that the current creditor and owner was Sutton Funding.

{¶ 10} Although both letters from HomEq to Herres had previously indicated that Sutton Funding was the owner of the note, EquiFirst transferred its interest in the note to Sutton Funding by means of an allonge on October 27, 2007. HomEq continued to be the loan servicer for the note. Herres states that he did not receive any notice that the note had been transferred to Sutton Funding and "for an extended period of time, did not know who to pay."

{¶ 11} Herres states that he called HomEq and "emphatically stated that he would not make any further payments until he was provided with some proof of assignment of the note and mortgage in question." Herres was notified that he owed approximately $6,000.

{¶ 12} On November 23, 2007, HomEq received a payment from Herres in the amount of $6,325.35 ($2,108.45 × 3), which was applied to the payments due on August 1, September 1, and October 1, 2007. On December 17, 2007, HomEq sent Herres a third letter, notifying him that he was in default as of November 1, 2007. This letter requested that payment of $5,139.42 be sent to HomEq at P.O. Box 70830, Charlotte, North Carolina, 28272–0830, by January 21, 2008, and informed Herres of the consequences of failing to do so. Although previous letters had identified the current owner of the debt as Sutton Funding, the December 2007 letter stated that the current owner and creditor was Barclays Bank P.L.C. Herres states that he also received a telephone call from HomEq requesting immediate payment; Herres informed HomEq that he would not make any further payments until he received proof of the assignment of the note and the mortgage. Herres failed to make any further payments.

{¶ 13} On February 5, 2008, Sutton Funding filed a complaint in foreclosure against Herres and others who might have an interest in the property. Sutton Funding claimed that it held the note and the mortgage, that Herres was in default, and that Sutton Funding was due $250,123.42, together with interest at the rate of 9.5 percent from October 1, 2007, plus court costs, advances, and other charges. Sutton Funding requested judgment on the note and foreclosure of the property. Sutton Funding attached copies of the note (without the allonge) and the mortgage to its complaint.

{¶ 14} On February 12, 2008—one week after the complaint was filed—MERS assigned its interest in the mortgage to Sutton Funding. The assignment of the

mortgage was recorded with the Montgomery County Recorder's Office on February 27, 2008.

{¶ 15} In April 2008, Herres sent a check, dated April 1, 2008, to HomEq in the amount of $8,800. Herres states that "[s]aid payment was returned to Defendant by HomEq. It was indicated that it had been sent to the wrong HomEq office and that it was not for the correct amount. In fact, the check had been sent to the office address provided to Defendant by HomEq and the check was in the amount requested by HomEq."

{¶ 16} On May 1, 2008, Herres filed an answer and counterclaim. As defenses, Herres asserted that Sutton Funding had never provided him with evidence that it owned the note and mortgage. Herres further alleged that he was not advised to whom he should make payment and where to send his payments. As a counterclaim, Herres alleged that Sutton Funding was "guilty of fraud" based on the following:

{¶ 17} "A. Despite numerous requests to provide information that Plaintiff was, in fact, the legal owner of the alleged note and the alleged mortgage, Plaintiff failed to provide said information to Defendant Herres;

{¶ 18} "B. Plaintiff has refused to acknowledge receipt of payments and, in fact, has not credited payments in at least the amount of $8,800.00;

{¶ 19} "C. Plaintiff has willfully concealed information concerning the note and mortgage from Defendant Herres; * * *."

{¶ 20} Herres alleged that these acts by Sutton Funding "were done with malice and with the attempt [intent] to defraud Defendant Herres." Herres requested compensatory damages in the amount of $8,800 and punitive damages in excess of $8 million.

{¶ 21} Sutton Funding moved to dismiss Herres's counterclaim pursuant to Civ.R. 12(B)(6). Sutton Funding argued that Herres had alleged a tort-contract hybrid claim, which was not allowed under Ohio law. Alternatively, Sutton Funding argued that Herres had failed to plead his fraud claim with particularity as required by Civ.R. 9(B). Sutton Funding further moved to dismiss Herres's claim for punitive damages on the ground that there is no stand-alone claim for punitive damages.

{¶ 22} Herres opposed the motion, arguing that his fraud claim was adequately pleaded and was based on Sutton Funding's wrongful concealment of the fact that it had been assigned the note and the mortgage and on Sutton Funding's failure to credit payments of $8,800. Herres did not seek to amend his counterclaim to correct the alleged deficiency in his pleading.

{¶ 23} On December 20, 2008, the trial court granted Sutton Funding's motion to dismiss the counterclaim, concluding that Herres had not pleaded his fraud claim with particularity. The court declined to address Sutton Funding's argument that Herres had improperly attempted to raise a hybrid tort-contract claim. The trial court further concluded that having dismissed Herres's fraud claim, Herres could not pursue punitive damages against Sutton Funding.

{¶ 24} In May 2009, Sutton Funding sought summary judgment on its claims against Herres. Sutton Funding supported its motion with an affidavit from Jill Orrison, a litigation-management liaison for HomEq. Sutton Funding also provided authenticated copies of the note, the allonge to the note, the mortgage, the assignment of mortgage, a printout of Herres's payment history, and the three notices of default and acceleration. Sutton Funding argued that its evidence established that it was the owner of the note and mortgage, that Herres was in default of his note and mortgage, and that it was entitled to judgment on the note and foreclosure of the property.

{¶ 25} Herres filed a verified memorandum in opposition to Sutton Funding's motion, arguing that Sutton Funding's evidence did not support "all of the underlying factors necessary for a mortgage foreclosure" and that summary judgment was improper because he was never notified of the assignment of the note and the mortgage. Herres stated: "Because Plaintiff never furnished Defendant prior to the filing of this lawsuit with any proof of the assignment of the note and mortgage, Defendant is not in default of said note and mortgage. In fact, this entire incident was caused by the misconduct of the Plaintiff not providing Defendant with proper proof of said assignment."

{¶ 26} On July 24, 2009, the trial court granted Sutton Funding's motion for summary judgment:

{¶ 27} "The affidavit of Jill Orrison states that Plaintiff is the holder of the note and mortgage, there has been a default in payment under the terms of the note and mortgage and that Plaintiff elected to accelerate the entire balance due. She also states that she is Litigation Management Liaison II with HomEq Servicing ('HomEq'), who is the duly authorized loan servicer for Plaintiff. The affidavit also states that HomEq sent Defendant notices of default and acceleration, and Defendant does not deny this. The note attached to the affidavit shows that monthly payments are to HomEq Servicing.

{¶ 28} "The Court does not find Defendant's arguments to be well-taken. The note specifically states that Defendant is to make his monthly mortgage payments to HomEq. The assignment of the note and mortgage to Plaintiff did not change the mortgage loan servicer of the note and where the payments were to be sent. Based upon the affidavit of Jill Orrison, Plaintiff has shown that a

dispute of fact does not exist and that Plaintiff is entitled to judgment prayed for in it's [sic] motion."

{¶ 29} In August 2009, the court entered a judgment and decree of foreclosure, which granted judgment to Sutton Funding on its note in the amount of $250,123.42, with interest at the rate of 9.5 percent from October 1, 2007, and adjustments for advancements for taxes, insurance, and other expenses. The judgment further stated that the note was secured by a mortgage owned by Sutton Funding and that Sutton Funding was entitled to have the equity of redemption foreclosed.[2] Herres appealed from that judgment.

{¶ 30} The trial court scheduled a sheriff's sale of the property. Herres subsequently moved for the sale to be vacated and sought relief from judgment, pursuant to Civ.R. 60(B), on the ground that Sutton Funding no longer owned the note and the mortgage. The sheriff's sale was vacated, but the court did not address Herres's Civ.R. 60(B) motion because Herres had appealed from the judgment and decree of foreclosure. The court stayed consideration of the Civ.R. 60(B) motion until this appeal has been resolved.

{¶ 31} On appeal, Herres claims that the trial court erred in dismissing his counterclaim and in granting summary judgment to Sutton Funding. In January 2010, Herres filed a motion to dismiss in this court, arguing that Sutton Funding is no longer the real party in interest and that the entire case against him should be dismissed. We denied Herres's motion to dismiss but invited the parties to file supplemental briefs addressing Sutton Funding's standing. Both parties filed supplemental briefs. We begin our discussion with Herres's supplemental assignment of error.

II

{¶ 32} Herres's supplemental assignment of error states:

{¶ 33} "The case should be dismissed because plaintiff appellee Sutton Funding, L.L.C. is no longer the owner of the note and mortgage in question, and is not a real party in interest."

{¶ 34} Herres claims that Sutton Funding's action against him should be dismissed, because Sutton Funding no longer owns the note and the mortgage. He asserts that if the judgment against him is allowed to stand, he could be held liable to two different parties – Sutton Funding and Bank of New York Mellon. Alternatively, Herres requests that we remand the matter to the trial court so that the court may "take evidence regarding the transfer of the note and

---

2. The judgment further recognized that the Montgomery County treasurer had an interest in the real estate for taxes that was senior in priority to Sutton Funding's interest.

mortgage, regarding who presently owns the note and mortgage, on the subject of when Appellant learned of this transfer of interest, and on all other facts relating to the transfer of the note and mortgage."

{¶ 35} Herres submitted a copy of a mortgage-loan transfer notice from the Bank of New York Mellon, as trustee, stating that Herres's note had been transferred to the Bank of New York Mellon on September 17, 2009; HomEq continued to be the company that services Herres's mortgage loan.

{¶ 36} In response, Sutton Funding argues that Herres has waived any real-party-in-interest claim because he did not properly raise the issue in the trial court. Sutton Funding states that Herres first raised the issue in the trial court during the pendency of this appeal, which was after the trial court lost jurisdiction to address the matter. In addition, Sutton Funding asserts that Sutton Funding was the real party in interest when the action was filed and, therefore, it was the proper party-plaintiff. Finally, Sutton Funding argues, citing Civ.R. 25(C), that substitution of the real party in interest is elective in the post-judgment stage of the case.

{¶ 37} Civ.R. 17(A) requires that every civil action "be prosecuted in the name of the real party in interest." A "real party in interest" is "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is *directly* benefitted or injured by the outcome of the case." (Emphasis sic.) *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 20 OBR 210, 485 N.E.2d 701. See, e.g., *Countrywide Home Loans Servicing, L.P. v. Shifflet,* Marion App. No. 9–09–31, 2010-Ohio-1266, 2010 WL 1175235, ¶ 12. Where the action has not been pursued by the real party in interest, Civ.R. 17(A) provides: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

{¶ 38} Because "[t]he issue of lack of standing 'challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court,' * * * the issue of standing or the 'real-party-in-interest' defense is waived if not timely asserted." (Citations omitted.) *Mid–State Trust IX v. Davis,* Champaign App. No. 07–CA–31, 2008-Ohio-1985, 2008 WL 1838350, ¶ 56.

{¶ 39} Moreover, the Rules of Civil Procedure do not require that a case be dismissed if the plaintiff in an action transfers its interest during pendency of the case. Rather, Civ.R. 25(C) provides:

{¶ 40} "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (A) of this rule."

{¶ 41} Although it is unclear when Herres became aware of the "involvement" of Bank of New York Mellon, he knew of changes since he originally borrowed from EquiFirst, and he failed to assert a real-party-in-interest defense prior to the entry of the trial court's judgment and decree of foreclosure. Accordingly, he waived any challenge to Sutton Funding's standing for purposes of this appeal. Moreover, Civ.R. 25(C) permits Sutton Funding to continue its action against Herres, even assuming that its interest has now been transferred. We will permit Sutton Funding to defend its judgment in this appeal.

{¶ 42} Whether Sutton Funding was, in fact, the real party in interest when it filed its complaint is a matter that the trial court may address in ruling on Herres's Civ.R. 60(B) motion, which remains pending before the trial court. Further, we leave to the trial court to determine whether Bank of New York Mellon (or whichever entity holds the note and mortgage at this time) should be substituted for Sutton Funding upon further proceedings in that court.

{¶ 43} The supplemental assignment of error is overruled.

### III

{¶ 44} Herres's first assignment of error states:

{¶ 45} "The trial court erred by dismissing defendant-appellant's counterclaim."

{¶ 46} Herres claims that the trial court erred in dismissing his counterclaim against Sutton Funding for fraud, pursuant to Civ.R. 12(B)(6), because the counterclaim was pleaded with particularity.

{¶ 47} A motion to dismiss a counterclaim pursuant to Civ.R.12(B)(6) for failure to state a claim upon which relief can be granted tests the sufficiency of the pleading. In order to prevail, it must appear beyond doubt from the allegations in the pleading that the counterclaimant can prove no set of facts entitling him to relief. See *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, at syllabus. The court must construe the allegations in the light most favorable to the counterclaimant, presume all the factual allegations in the counterclaim as true, and make all reasonable inferences in favor of the counterclaimant. See *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 48} Under Civ.R. 8(A), a complaint or other pleading, such as a counter-claim, that sets forth a claim for relief "shall contain * * * a short and plain statement of the claim showing that the party is entitled to relief." However, when a pleading sets forth a claim of fraud or mistake, Civ.R. 9(B) requires that "the circumstances constituting fraud or mistake shall be stated with particularity."

{¶ 49} A claim for common-law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 462 N.E.2d 407; *Collins v. Natl. City Bank,* Montgomery App. No. 19884, 2003-Ohio-6893, 2003 WL 22971874, ¶ 39.

{¶ 50} "Failure to specifically plead the operative facts constituting an alleged fraud presents a defective claim that may be dismissed. *Universal Coach, Inc. v. New York Transit Auth., Inc.* (1993), 90 Ohio App.3d 284[, 629 N.E.2d 28]. The 'particularity' requirement of Civ.R. 9(B) means that the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud." *Rieger v. Podeweltz,* Montgomery App. No. 23520, 2010-Ohio-2509, 2010 WL 2225398, ¶ 9.

{¶ 51} The trial court concluded that Herres failed to plead his claim of fraud with particularity, and we agree. Herres alleged that Sutton Funding failed to substantiate that it was the owner of the note and mortgage, "[d]espite numerous requests to provide [such] information," and that Sutton Funding "has willfully concealed information concerning the note and mortgage from Defendant Herres." Herres further alleged that Sutton Funding refused to acknowledge the receipt of or to credit his payment of $8,800. He claimed that these acts were done with malice and with intent to defraud him. Herres states on appeal that his claim is for fraudulent concealment and "wrongful and malicious failure to credit payments" to his account.

{¶ 52} With respect to the allegedly withheld information, Herres failed to allege operative facts, such as when his contacts with Sutton Funding or an agent of Sutton Funding occurred (to the extent that his claim is based on his requests for information from HomEq), what information regarding Sutton Funding's ownership of the note and mortgage was withheld, how that information was relevant, how he relied on the alleged concealment of that information to his

detriment, and what injury he sustained. Even construing the allegations in Herres's counterclaim in the light most favorable to him, the counterclaim is devoid of operative facts showing that Sutton Funding, or HomEq acting for Sutton Funding, concealed material information and/or that Herres relied upon that concealment to his detriment.

{¶ 53} With respect to the $8,800 payment that Sutton Funding allegedly rejected, Herres failed to allege any operative facts to support his claim that this rejection constituted fraud rather than a breach of Sutton Funding's contractual obligations. "[A] tort claim based upon the same actions as those upon which a breach-of-contract claim is based will exist independently of the contract action 'only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.'" *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 46, ¶ 51, quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261. Herres has merely claimed that Sutton Funding failed to credit his account; he does not specify when he sent the payment, where and to whom the payment was sent, and how the failure to credit his account constituted fraud. Based on Herres's allegations, Herres has failed to state a claim for fraud due to Sutton Funding's failure to credit $8,800 to his account.[3]

{¶ 54} The trial court properly granted Sutton Funding's motion to dismiss the counterclaim, pursuant to Civ.R. 12(B)(6).

{¶ 55} The assignment of error is overruled.

## IV

{¶ 56} Herres's second assignment of error states:

{¶ 57} "The trial court erred by granting summary judgment in favor of plaintiff-appellee."

{¶ 58} Summary judgment is governed by Civ.R. 56. Under that rule, summary judgment should be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and

---

3. Although we are limited to the allegations in Herres's counterclaim in reviewing the dismissal of this fraud claim, we note that the $8,800 check attached to Herres's memorandum in opposition to summary judgment is dated April 1, 2008, which was after the complaint was filed. The act of rejection of Herres's check at this juncture would not be a basis for a fraud claim. HomEq had no duty to accept the payment after the foreclosure action was filed. Indeed, had HomEq accepted the payment, the acceptance could constitute an accord and satisfaction, creating an affirmative defense to the foreclosure action that Sutton Funding had filed.

reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 59} Upon a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. Id.; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. Id. Throughout, the evidence must be construed in favor of the nonmoving party. Id. An appellate court reviews summary judgments de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. In other words, we review such judgments independently and without deference to the trial court's determinations. Id.

{¶ 60} Herres claims that there were genuine issues of material fact whether he cured his arrearage or attempted to cure his arrearage. He states that he sent a payment of $4,216.90 on July 16, 2007, and later $8,800, both of which were returned for insufficient funds. Herres further argues that the assignment of the note changed the address to which he was to send payments to HomEq and, consequently, Sutton Funding was required to notify him of the assignment or transfer of the note.

{¶ 61} Construing the evidence (including Herres's verified memorandum in opposition to Sutton Funding's motion for summary judgment) in the light most favorable to Herres, we find no genuine issues of material fact. It is undisputed that Herres executed a note in the amount of $250,750; a mortgage on the property located at 300 Pauly Drive secured that note. Herres's note required him to make monthly payments to HomEq, the loan servicer, beginning on June 1, 2007.

{¶ 62} The payment history for Herres's loan, which was attached to Orrison's affidavit, demonstrates that Herres failed to make payments on June 1 or July 1, 2007, and that his initial payment of $4,216.90 in mid-July 2007 was returned for insufficient funds. Herres's payment of $4,216.90 in September 2007 was applied to his June and July balances. His payment of $6,325.35 in November 2007 was applied to August, September, and October 2007 balances. HomEq had sent Herres three notices informing him of his default, how to cure the default, and the consequences of any failure to do so. At the time Sutton Funding filed its complaint, Herres had not made any further payments and the account was in default.

{¶ 63} Herres argues that he sent in a payment for $8,800 that was not applied to his account, and he attached a copy of that check to his opposition memorandum. Herres asserts that he sent the check to the address indicated by HomEq, and the check was in the amount requested by HomEq. The check is dated April 1, 2008, and the memo line states that the check was to cover payments for the months of January, March, April and May. There is no evidence that Herres made any payments due on November 1 and December 1, 2007, or on February 1, 2008, and that the account was made current (even disregarding the confusion caused by Herres's statement that the $8,800 check was returned for insufficient funds). We find no genuine issue of material fact that Herres remains in default of his obligation.

{¶ 64} Orrison's unrefuted affidavit established that Herres owed a principal balance of $250,123.42, together with interest at the rate of 9.5 percent per year from October 1, 2007, plus court costs, advances, and other charges.

{¶ 65} Herres also claims that summary judgment was inappropriate because the assignment or transfer of the note resulted in a change of where his monthly payments were to be sent. He states that the notice of default required him to make payments to HomEq's home offices in Charlotte, North Carolina, whereas the note listed an address in City of Industry, California. Although the notices of default provided a different address for Herres to send payments to cure his default, there is no evidence that Herres was required to make his regular monthly payments to a loan servicer other than the one listed on the note. Further, Herres waived his right to complain of the difference when he sent payments to HomEq at its North Carolina address.

{¶ 66} We find no genuine issue of material facts in this case, and the trial court properly concluded that Sutton Funding was entitled to summary judgment on its claim.

{¶ 67} The second assignment of error is overruled.

## V

{¶ 68} The judgment of the trial court will be affirmed.

*Judgment affirmed.*

DONOVAN, P.J., and GRADY, J., concur.