[Cite as *Countrywide Home Loans Servicing, L.P. v. Shifflet*, 2010-Ohio-1266.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

COUNTRYWIDE HOME LOANS
SERVICING, L.P.,

     PLAINTIFF-APPELLEE,                CASE NO. 9-09-31

     v.

DORITTA A M SHIFFLET,
aka DORITTA M. SHIFFLET, ET AL.,

     DEFENDANTS-APPELLEES,
     -and-                          O P I N I O N

TIMOTHY W. SHIFFLET,

     DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 2009 DV 0235

Judgment Affirmed

Date of Decision:   March 29, 2010

APPEARANCES:

    *John G. Neal*  for Appellant

    *C. Scott Casterline*  for Appellee, Countrywide Home Loans Servicing

**SHAW, J.**

{¶1} Defendant-appellant, Timothy Shifflet, appeals the July 30, 2009 judgment of the Common Pleas Court of Marion County, Ohio, granting summary judgment in favor of the plaintiff-appellee, Countrywide Home Loans Servicing, L.P.

{¶2} The facts relevant to this appeal are as follows. In late November of 2006, Shifflet and his then-wife, Doritta Shifflet, borrowed $82,500.00 from Countrywide Home Loans, Inc. As security for the loan, Doritta executed a promissory note and a mortgage deed on the real property commonly known as 3158 Schell Drive, Marion County, Ohio. Timothy also signed the mortgage, but he did not sign the promissory note.

{¶3} Both Doritta and Timothy are identified as the borrowers/mortgagors on the mortgage. Countrywide Home Loans, Inc., is the identified lender on the promissory note and mortgage. Mortgage Electronic Registrations Systems, Inc. ("MERS"), as the nominee for Countrywide Home Loans, Inc., is the identified mortgagee on the mortgage.

{¶4} The mortgage states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." The mortgage also provides:

> **This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the**

> **Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property * * ***

The property that is then described is the Schell Drive property. The mortgage further states:

> **Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.**

As of October 1, 2008, the promissory note was in default.

{¶5} On March 20, 2009, Countrywide Home Loans Servicing, L.P. ("CHLS"), filed a complaint in foreclosure on the Schell Drive property, asserting ownership of the mortgage and note. Timothy filed an answer on May 15, 2009, in which he maintained that CHLS was not the real party in interest.[1] CHLS amended its complaint on May 19, 2009, once again asserting ownership of the mortgage and note.[2]

---

[1] Doritta did not file an answer and never appeared to contest the foreclosure.
[2] The complaint was amended to include another bank as a party defendant. This bank claimed an interest in the property based upon a judgment it received against Timothy in a different matter.

{¶6} CHLS filed a motion for summary judgment on June 2, 2009, together with an affidavit of Keri Selman, the assistant vice president of CHLS, and copies of the note and mortgage. Timothy filed a response to this motion on June 30, 2009, asserting that he did not execute the promissory note and that MERS, rather than CHLS, was the holder of the mortgage, rendering it the real party in interest not CHLS. Timothy did not dispute the merits of the foreclosure itself.

{¶7} On July 16, 2009, CHLS filed its reply to Timothy's response. CHLS admitted that Timothy did not sign the promissory note and conceded that no money judgment could be taken against him. However, CHLS asserted that MERS executed an assignment of the mortgage in favor of CHLS on February 23, 2009, and that this assignment was filed with the Marion County Recorder's Office on March 23, 2009. CHLS attached a copy of this assignment to its reply.

{¶8} The trial court granted summary judgment in favor of CHLS on July 30, 2009, finding that the mortgage was duly assigned to CHLS. This appeal followed, and Timothy now asserts two assignments of error.

**THE TRIAL COURT ERRED IN CONCLUDING THAT THERE WAS NO MATERIAL DISPUTE OF FACTS PURSUANT TO CIVIL RULE 56(C).**

**THE TRIAL COURT ERRED IN CONCLUDING THAT THE PLAINTIFF-APPELLEE WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW PURSUANT TO CIVIL RULE 56(C).**

As these assignments of error are related, we elect to address them together.

**{¶9}** In his two assignments of error, Timothy asserts that the trial court erred in granting summary judgment to CHLS because CHLS failed to establish that it was the real party in interest by demonstrating that the mortgage was assigned to it as required by Civ.R. 17. More specifically, in his response to CHLS' motion for summary judgment, Timothy maintained that MERS remains the mortgagee, and as such, is the proper party to bring this action, not CHLS. Thus, Timothy contends that summary judgment was improperly granted to CHLS.

**{¶10}** The standard for review of a grant of summary judgment is one of de novo review. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, a grant of summary judgment will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.

**{¶11}** The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits." Civ.R. 56(B). However, "[a]

party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 1992-Ohio-95. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be rendered. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.

{¶12} This Court has previously discussed the issue of real parties in interest in a foreclosure action. See *First Union Nat'l Bank v. Hufford*, 146 Ohio App.3d 673, 767 N.E.2d 1206, 2001-Ohio-2271. In *Hufford*, we stated that Civ.R. 17(A) requires that every action "be prosecuted in the name of the real party in interest." *Id*. at ¶ 13, quoting Civ.R. 17(A). A "real party in interest" is "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case." *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 485 N.E.2d 701. "A party who has failed to establish itself as a real party in interest lacks standing to

invoke the jurisdiction of the court and is not entitled to judgment as a matter of law." *Hufford*, 2001-Ohio-2271, at ¶ 13 (citations omitted.).

{¶13} In *Hufford*, the defendant-homeowner asserted that the plaintiff-bank was not the holder of the promissory note and mortgage and informed the court that another entity, not a party to the action, was sending notices to her that it had a superior interest in the property and had informed her attorney that it purchased the mortgage from First Union National Bank. *Id*. at ¶¶ 19, 22. The plaintiff-bank, First Union National Bank of Delaware, failed to present documentation evidencing that it had been assigned the note and mortgage from the original payee on the note and lender on the mortgage, First Union Home Equity Bank, N.A., Charlotte, North Carolina. *Id*. at ¶ 20. The only evidence the plaintiff-bank produced was a notification from the Controller of Currency, Administrator of National Banks in Washington, D.C., indicating that First Union Bank of Delaware and First Union Home Equity, N.A., had merged to become First Union National Bank of Delaware, and the affidavit of the assistant vice president of First Union National Bank, which simply provided that the underlying note and mortgage were part of an account under her supervision that the defendant defaulted on. *Id*. at ¶¶ 20-21. Thus, we held that the trial court erred in granting summary judgment to the plaintiff-bank because the plaintiff-bank failed to

establish that it was the real party in interest and entitled to judgment as a matter of law. *Id.* at ¶ 24.

{¶14} The case sub judice is factually distinguishable from *Hufford*. Unlike the affidavit in *Hufford*, the affidavit of Keri Selman states that CHLS is the holder of the mortgage deed and note in this case. This fact was undisputed by Timothy. The Revised Code specifically states that the holder of an instrument is the person entitled to enforce the instrument, including in some circumstances one who is in wrongful possession of the instrument. R.C. 1303.31(A)(1), (B).

{¶15} Further, unlike the facts in *Hufford*, CHLS attached a copy of an assignment from MERS to CHLS to its reply to Timothy's response that CHLS was not the real party in interest. This assignment reveals that as of February 23, 2009, MERS "does hereby sell, transfer, and assign to [CHLS], its successors and assigns, all its right, title and interest in and to that certain mortgage * * * together with the note and indebtedness therein mentioned[.]" This assignment identifies the Shifflets as the parties who executed the mortgage and identifies the subject property as the Schell Drive property at issue in this case. The document was executed on March 17, 2009, and recorded in Book 1084, Page 921 in the Marion County Recorder's Office on March 23, 2009.

{¶16} Although the dissent maintains that CHLS is not the real party in interest because MERS, itself, was never the real party in interest due to the

reservation in the mortgage deed regarding MERS as nominee only, it overlooks three important points. First, Timothy never raised this as an issue, either at the trial court level or to this court, choosing instead to assert that CHLS was not assigned MERS' interest. In fact, Timothy has steadfastly contended that MERS is the proper party to bring suit. However, as noted, MERS properly assigned its interest in the property to CHLS. Second, the mortgage specifically states that the Borrower (which is previously defined in the instrument to include Timothy) understands and agrees that MERS holds legal title and has the right to foreclose and sell the property. Thus, MERS, and now by assignment CHLS, has a real interest in the subject matter of the litigation rather than simply an interest in the action. Third, the affidavit of Selman states that CHLS is the holder of *the note and the mortgage*. As holder of both these instruments, CHLS is entitled by law to enforce them and is directly benefited or injured by the outcome of the case.

{¶17} Given the affidavit of Selman and, more importantly, the documentary evidence of the assignment of the mortgage and note to CHLS, the trial court did not err in granting summary judgment to CHLS. Accordingly, the two assignments of error are overruled, and the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

Case No. 9-09-31

**/jlr**

**ROGERS, J., dissents.**

{¶16} I respectfully dissent from the conclusions of the majority. The alleged assignment is based on the mortgage which designated MERS as an agent for the purpose of servicing the note and mortgage. Nothing in that document purported to transfer to MERS any interest in the real estate or the repayment of moneys loaned, except as the servicing agent for the lender. Specifically, the mortgage states that it:

> **[S]ecures to Lender [Countrywide Home Loans, Inc.]: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property * * *.**

{¶17} While the quoted language indicates that the borrower "does hereby mortgage, grant and convey to MERS * * * the following described property", that language is limited by the words immediately following it, to wit: "solely as nominee for Lender and Lender's successors and assigns."

{¶18} This language clearly indicates that the "assignment" from Countrywide to MERS was limited in scope in that MERS was merely a "nominee

-10-

for Lender and Lender's successors and assigns." This language transfers no real interest in the real property or the loan. Accordingly, an assignment from MERS could only convey that to which MERS actually had an interest.

**{¶19}** I would find that the documents presented to the trial court were insufficient to sustain a finding that Countrywide Home Loans Servicing, L.P. was the real party in interest and would reverse the judgment of the trial court.