Rogers, Judge,
concurring in part and dissenting in part.
{¶ 26} I respectfully concur in part and dissent in part from the decision of the majority.
{¶ 27} As to assignment of error No. I, I concur fully with the majority’s finding that the trial court did not err in denying BAC’s motion to substitute it as a party-defendant for MERS. I agree with the majority’s finding that when the trial court issued a judgment entry against MERS’s foreclosing on its interest on March 11, 2009, MERS no longer had any viable interest in the property that it could assign to BAC on June 1, 2009. Therefore, I agree that given BAC’s lack of interest in the property, the trial court was reasonable in denying BAC’s motion to substitute.
{¶ 28} Additionally, I wish to emphasize that the mortgage designated MERS “solely as nominee for SIB Mortgage Corp.” As expressed in my dissent in Countrywide Home Loans Servicing, L.P. v. Shifflet, 3d Dist. No. 9-09-31, 2010-Ohio-1266, 2010 WL 1175235, ¶ 18-21, I believe this language served solely to designate MERS as an agent for purposes of servicing the note and mortgage and did not transfer to MERS any interest in the real estate or the repayment of moneys loaned. Therefore, it was never a real party in interest.
{¶ 29} Additionally, I believe that the majority’s finding in assignment of error No. I, with which I concur, is inconsistent with the remainder of the majority opinion.
{¶ 30} In its analysis of assignment of error No. II, the majority finds that the trial court did not abuse its discretion when it vacated the second foreclosure action (filed by BAC) and its default judgment because (1) BAC never obtained any interest in the property when MERS assigned to it the Smiths’ mortgage, and (2) a pending foreclosure action may be grounds for dismissal of an assignee’s complaint where the action is between the same parties. Nevertheless, the trial *549 court did not vacate the portion of the second foreclosure action against the Smiths individually. Further, in its analysis of assignment of error No. II, the majority holds that the trial court did not abuse its discretion in listing BAC as the fourth-priority lien holder because (1) BAC had a right to collect its unsecured judgment lien from the sale of the real estate foreclosed upon, and (2) BAC’s judgment lien was subordinate to Minster’s and Union Bank’s interests.
{¶ 31} While I agree with the majority’s conclusion that the trial court did not err in vacating portions of the second foreclosure action, I believe that the trial court erred in failing to vacate the entire second foreclosure action. I find inconsistent the majority’s finding that any interest MERS had in the property was extinguished on March 11, 2009, and, thus, that it passed no viable interest to BAC, and the majority’s subsequent validation of the trial court’s finding that BAC’s default judgment and decree of foreclosure were valid against the Smiths. For the same reason, I find inconsistent the majority’s validation of the trial court’s prioritizing of BAC as the fourth hen holder in its December 2009 entry. I believe that the March 11, 2009 default judgment extinguished both the legal and equitable interests that MERS, and consequently, BAC, had in the property. I would, therefore, reverse the trial court’s judgment, finding that it should have vacated the entire second foreclosure action and that it abused its discretion in recognizing BAC as a lien holder in the first foreclosure action, to which it was never a party. See also Fifth Third Bank v. Hopkins, 177 Ohio App.3d 114, 2008-Ohio-2959, 894 N.E.2d 65, ¶ 20 (Carr, P.J., concurring) (“[I]f such subsequent claims are not barred, consumers will be needlessly forced to defend numerous separate lawsuits. The ramifications could be onerous. First, to pay to defend against multiple lawsuits, debt-laden consumers might be forced to assume even greater financial burdens, taking out second or third mortgages on subsequent real estate purchases. This cycle could lead to consumers’ overextending themselves financially and facing additional subsequent foreclosure actions. Second, I believe that these subsequent lawsuits for money due, which could be resolved in conjunction with an initial foreclosure action, would clog the dockets of our trial courts”).
{¶ 32} I also disagree with the trial court’s application of the lis pendens doctrine, which it used to support its conclusion that BAC had never obtained an interest in the property. I do not believe that this is an appropriate use of lis pendens, but rather that any interest MERS had, and consequently that BAC could have obtained, was extinguished as operation of judgment.
{¶ 33} Finally, even if BAC had had a valid assignment from a real party in interest, I would find that BAC’s foreclosure filing was barred by res judicata as argued in Union Bank’s “Motion in Contra to Plaintiffs Motion for Default Judgment and Motion to Dismiss Plaintiffs Complaint.” The Supreme Court of *550 Ohio has held that “[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel.” Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. This court has previously held that “[c]laim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.” Dawson v. Dawson, 3d Dist. Nos. 14-09-08,14-09-10, 14-09-11, and 14-09-12, 2009-Ohio-6029, 2009 WL 3806251, ¶ 36. Additionally, “[w]here a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter.” Dawson at ¶ 36, citing Grava at 382. Here, Union Bank obtained a default judgment against BAC concerning the same subject matter in March 2009. Consequently, I would find BAC’s foreclosure filing in August 2009 to be barred by res judicata.