[Cite as *U.S. Bank Natl. Assn. v. Crow*, 2016-Ohio-5391.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WF1, | ) ) ) ) ) ) | CASE NO. 15 MA 0113 |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | OPINION |
| MARTHA E. CROW aka, M. ELIZABETH AGUILAR-CROW, et al., | ) ) ) ) | |
| DEFENDANTS-APPELLANTS. | ) ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 2014-CV 01739

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Scott King
Atty. Terry Posey Jr.
Thompson Hine, LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Miamisburg, Ohio 45342

For Defendants-Appellants: Atty. Bruce Broyles
Law Office of Bruce M. Broyles
5815 Market Street, Suite 2
Boardman, Ohio 44512

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: August 16, 2016

ROBB, J.

**{¶1}** Defendants-Appellants Martha E. Crow (aka M. Elizabeth Aguilar-Crow) and Robert Crow appeal the decision of the Mahoning County Common Pleas Court entering a judgment on a note and a decree in foreclosure. The trial court granted summary judgment in favor of Plaintiff-Appellee U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-WF1 c/o Wells Fargo Bank, N.A. ("the trustee bank").

**{¶2}** Appellants set forth arguments on appeal concerning: the sufficiency of the affidavit filed in support of the summary judgment motion; the timing and sender of the notice of default; the amount in the notice of default; and compliance with a pooling and servicing agreement prospectus and prospectus supplement. For the following reasons, these arguments are overruled, and the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

**{¶3}** On November 7, 2005, Mrs. Crow executed a promissory note in favor of Wells Fargo Bank, N.A. in the amount of $142,500. The note was secured by a mortgage upon realty located at 1854 5th Avenue in Youngstown, Ohio. The mortgage was executed by Mrs. Crow and her husband and recorded on November 22, 2005.

**{¶4}** On July 15, 2014, the trustee bank filed a foreclosure action, seeking judgment on the note and foreclosure under the mortgage. The complaint alleged Mrs. Crow defaulted on the note and owed $134,998.76, plus interest from November 1, 2010. The trustee bank asserted it: accelerated the debt; performed all conditions precedent; was entitled to enforce the note and had possession of the original note; and had been assigned the mortgage. The blank-indorsed note and recorded mortgage were attached to the complaint; also attached was the assignment of mortgage from Wells Fargo Bank, N.A. to the trustee bank, which was executed on August 26, 2011 and recorded on September 1, 2011.

**{¶5}** Appellants' answer denied various assertions in the complaint and raised the following affirmative defenses: the mortgage was not part of the trust due to non-compliance with the pooling and servicing agreement as it was assigned directly to the trustee bank and the assignment was executed after the closing date of the trust; notice of default was not provided as required by ¶ 6(C) of the note; and notice of acceleration was not provided as required by ¶ 22 of the mortgage.

**{¶6}** The trustee bank moved for summary judgment, submitting the affidavit of Cynthia Thomas, Vice President of Loan Documentation for Wells Fargo Bank, N.A., the servicing agent for the trustee bank. She incorporated and attached the note, mortgage, assignment of mortgage, payment history, and demand letter. She stated the trustee bank or an agent has had possession of the note since the date the complaint was filed. She attested the account was in default, explaining the December 1, 2010 payment and all subsequent payments remained unpaid. She confirmed the principal due, with interest running from November 1, 2010, and itemized other amounts due through the date of her November 14, 2014 affidavit, including hazard insurance and taxes. The affiant said the May 13, 2014 notice of default was sent by first class mail in accordance with the terms of the note and mortgage.

**{¶7}** Appellants filed a memorandum in opposition to summary judgment which outlined various arguments, including most of those raised on appeal. Counsel submitted his own affidavit. He explained how he obtained the trust's Pooling and Servicing Agreement Prospectus and Prospectus Supplement from the website of the Securities and Exchange Commission. He attached those documents to his affidavit.

**{¶8}** On June 16, 2015, the trial court granted the motion for summary judgment. The court entered judgment on the note against Mrs. Crow in the amount of $134,998.76 with interest from November 1, 2010 and issued a decree in foreclosure. Appellants filed a timely notice of appeal.

<u>ASSIGNMENT OF ERROR & GENERAL LAW</u>

**{¶9}** Appellants set forth the following general assignment of error:

"The trial court erred in granting summary judgment to Appellee when there were genuine issues of material fact still in dispute."

{¶10} We review the trial court's application of the summary judgment standard de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Summary judgment can be granted where there remain no genuine issues of material fact for trial and where, after construing the evidence most strongly in favor of the non-movant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing Civ.R. 56(C). The burden of showing that there are no genuine issues of material fact initially falls upon the party who files for summary judgment. *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E .2d 264 (1996).

{¶11} Thereafter, the non-movant may not rest upon mere allegations or denials in the party's pleadings but must respond, through affidavit or as otherwise provided in the rule, by setting forth specific facts showing that there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the non-movant does not so respond, summary judgment, if appropriate, shall be entered against him. Civ.R. 56(E). Although courts are cautioned to construe the evidence in favor of the non-moving party, summary judgment is not to be discouraged where the movant establishes his case and the non-movant fails to respond with proper evidence supporting the essentials of his defense. *See Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).

{¶12} By way of introduction on the topic of a promissory note, a holder of an instrument is entitled to enforce it. *See* R.C. 1303.31(A)(1). In addition to the holder, a "person entitled to enforce" an instrument also includes: a non-holder in possession of the instrument who has the rights of a holder; and a person who is not in possession of the instrument but who established he is entitled to enforce the instrument and that it was lost or destroyed. R.C. 1303.31(A)(2)-(3).

{¶13} One may be a "person entitled to enforce" the instrument even though he is not the owner of the instrument or is in wrongful possession of the instrument.

R.C. 1303.31(B). If the instrument is payable to bearer, then the person in possession of the instrument is the holder of the instrument. *See* R.C. 1301.201(B)(21)(a); former R.C. 1301.01(T)(1)(a). *See also* R.C. 1303.21(B) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." R.C. 1302.25(B).

**{¶14}** Appellants' first and fourth arguments touch upon standing, raising issues with the trustee bank's entitlement to enforce the note and its right to foreclose on the mortgage. Although standing to file a foreclosure action must exist at the time the complaint is filed, it need not be proven by the plaintiff in the complaint and can be proven if contested later in the action (such as at the summary judgment stage). *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 12, applying *Federal Home Loan Mortgage Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 28.

**{¶15}** Appellants separate their arguments into four issues presented for review, and we divide our analysis accordingly.

<u>SUFFICIENCY OF AFFIDAVIT</u>

**{¶16}** The first issue presented for review asks: "Whether the affidavit of Cynthia A. Thomas a Vice President of Loan Documentation with Wells Fargo Bank, N.A. was sufficient to demonstrate the absence of a genuine issue of material fact."

**{¶17}** As aforementioned, the affiant incorporated and attached copies of the note, mortgage, mortgage assignment, demand letter, and payment history to her affidavit. Appellant contends the language used in the affidavit was insufficient to authenticate these "copies" as the affiant failed to specify the copies were "true and accurate." Without these documents, Appellant states the trial court could not determine the note was endorsed in blank (by Wells Fargo Bank, N.A. as the original payee), the mortgage was assigned to the trustee bank, and the notice of default was proper.

**{¶18}** In general, no evidence or stipulation may be considered in ruling on a summary judgment motion except as stated in Civ.R. 56. *See* Civ.R. 56(C). There is an exception where the non-movant fails to object to the movant's summary judgment evidence, in which case consideration of unsworn and unauthenticated exhibits is within the trial court's discretion. *State ex rel. Gilmour Realty, Inc. v. Mayfield Heights*, 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 10, 17; *Bank of America, N.A. v. Staples*, 7th Dist. No. 14MA109, 2015-Ohio-2094, ¶ 36-39. The evidence that can be used in ruling on summary judgment includes the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ.R. 56(C).

**{¶19}** Pursuant to Civ.R. 56(E), affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. This requirement can be satisfied where the affiant says she has personal knowledge the records exist in the business file and explains how she is competent to incorporate those records. *See, e.g., State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981).

**{¶20}** In satisfying this portion of Civ.R. 56(E), the affiant attested: she was familiar, in the regular performance of her job functions, with the business records maintained by Wells Fargo for the purpose of servicing mortgage loans; the records were made at or near the time of the activity from information provided by persons with knowledge of the activity reflected in such records; the records were kept in the course of regular business activity; and she acquired personal knowledge of the matters in the affidavit by examining these business records. *See* Evid.R. 803(6) (business records hearsay exception). The affiant said she was authorized to execute the affidavit in her capacity as the Vice President of Loan Documentation for Wells Fargo Bank, N.A., who was the servicing agent for the trustee bank, and she was competent to testify to the matters contained in the affidavit. In a foreclosure action, "the affidavit of a loan servicing agent employee with personal knowledge provides sufficient evidentiary support for summary judgment in favor of the

mortgagee." *Fannie Mae v. Bilyk*, 10th Dist. No. 15AP-11, 2015-Ohio-5544, ¶ 11 (collecting cases).

{¶21} Civ.R. 56(E) also provides: "Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." The affiant discussed various documents and attached these documents after testifying: "Attached as exhibits hereto are copies of the Note (Exhibit A) with any applicable endorsements and the Mortgage (Exhibit B) with any applicable Assignments (Exhibit C), and a payment history (Exhibit D), and the demand letter (Exhibit E) redacted solely to protect any private, personal, financial information." Affidavit at ¶ 10.

{¶22} In *Seminatore*, the Supreme Court stated: "The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions." *Seminatore*, 66 Ohio St.2d at 467. Notably, the Court was addressing the form of the particular affidavit submitted in the case before it; that affidavit specifically employed the phrase "true copies and reproductions." *See Seminatore*, 8th Dist. No. 40343 (Mar. 6, 1980).

{¶23} The Supreme Court's syllabus provides: "Verification required by Civ.R. 56(E) of documents attached to an affidavit supporting or opposing a motion for summary judgment is satisfied by an appropriate averment in the affidavit itself." *Seminatore*, 66 Ohio St.2d at paragraph 3 of syllabus. This suggests the language on "true copies and reproductions" is but an example of an "appropriate averment" rather than an absolute requirement. *See, e.g., U.S. Bank Natl. Assn. v. Stallman,* 8th Dist. No. 102732, 2016-Ohio-22, ¶ 6, 15-16.

{¶24} In addressing other aspects of the affidavit in *Seminatore*, the Court found "[t]he form leaves much to be desired," but "it is within the sound discretion of the trial court to require such an affidavit to be made more precise * * *" and "to accept the affidavit in the form submitted." *Id.* at 467-468. This dealt with a statement in the affidavit that the facts set forth in a "preliminary statement" were

incorporated and "true to the best of my knowledge and belief," but the preliminary statement was unclear as to what matters were argument and what matters were factual statements. *Id.* at 468. The Supreme Court upheld the trial court's exercise of discretion in accepting the affidavit in support of summary judgment and held the appellate court erred in finding the affidavit to be insufficient as a matter of law. *Id.*

**{¶25}** The trustee bank urges that Civ.R. 56(E) does not require talismanic language in attaching a sworn copy, i.e. the affiant need not use an incantation describing as "true" or "accurate" the "copies" of named documents attached as exhibits. The trustee bank argues the addition of "true" or "accurate" before "copy" is redundant, akin to saying "the exact same" or "free gift." The bank cites various Evidence Rules as reviewed in a Fourth District case where the affiant testified the promissory note attached to the complaint was a copy of the note the debtor executed. See *American Savs. Bank v. Wrage*, 4th Dist. No. 13CA3566, 2014-Ohio-2168, ¶ 20 (finding the affiant's statement established the note was a duplicate under Evid.R. 1001(4) and authenticated the exhibit).

**{¶26}** "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be." Evid.R. 901(B).

**{¶27}** This court and others have accepted statements other than "true copies" or "true copies and reproductions." For instance, an affiant can describe an exhibit showing financial information in an account as a "hard copy printout." *See Citibank v. McGee*, 7th Dist. No. 11MA158, 2012-Ohio-5364, ¶ 14-18; *Citibank (South Dakota) N.A. v. Lesnick*, 11th Dist. No. 2005-L-013, 2006-Ohio-1448, ¶ 14.

**{¶28}** The witness established she attained personal knowledge of the information in her affidavit through regularly kept business records. She testified about the knowledge she gained from those records via a sworn, properly notarized

affidavit. Her affidavit incorporated documents by reference and specifically listed the attached exhibits. She explained the attached copies had been redacted to protect certain information. (The loan number was blacked out.) By stating in a sworn affidavit the exhibits attached were "copies" of the listed documents, she verified that the documents were what she claimed.

{¶29} We additionally note that when a claim is founded on a written instrument, a copy of the written instrument must be attached to the pleading. Civ.R. 10(D). "A copy of any written instrument attached to a pleading is a part of the pleading for all purposes." Civ.R. 10(C). Pursuant to Civ.R. 56(C), the pleadings are properly considered as summary judgment evidence. Here, the note, mortgage, and mortgage assignment were attached to the complaint as the claim was founded upon these written instruments. The contents of these written instruments attached to the complaint could be viewed in ruling on summary judgment. *See Ohio Dept. of Job & Family Servs. v. Amatore*, 7th Dist. No. 09MA159, 2010-Ohio-2848, ¶ 37.

{¶30} After citing *Amatore*, the Tenth District has specified that a plaintiff is not required to provide an affidavit authenticating the note and mortgage attached to a complaint in a foreclosure action. *U.S. Bank, Natl. Assn., as Successor Trustee v. Goldsmith*, 10th Dist. No. 14AP-783, 2015-Ohio-3008, ¶ 10, also citing *M & T Bank v. Steel*, 8th Dist. No. 101924, 2015-Ohio-1036, ¶ 17. On the topic of possession of bearer paper, courts have upheld summary judgment despite arguments on possession where the promissory note attached to the complaint was indorsed in blank and a representative of the servicing agent or the bank testified by affidavit that the plaintiff was in possession of the note at the time of the filing of the complaint. *See, e.g., U.S. Bank Natl. Assn., as Trustee v. Urbanski*, 10th Dist. No. 13AP-520, 2014-Ohio-2362, ¶ 10; *U.S. Bank, N.A. v. Adams*, 6th Dist. No. E-11-070, 2012-Ohio-6253, ¶ 18.

{¶31} Contrary to Appellant's related suggestion, it has been said an affiant need not specifically explain that the attached copy was compared to the original note in order to ensure the bank actually had possession of a note payable to bearer. *See Wells Fargo Bank, N.A. v. Hammond*, 8th Dist. No. 100141, 2014-Ohio-5270, 22

N.E.3d 1140, ¶ 37; *HSBC Mtge. Servs. v. Williams*, 12th Dist. No. CA2013-09-174, 2014-Ohio-3778 (noting this is not required under *Seminatore*). In addition, it has been observed: "the averment in [the] affidavit that [the bank] was in possession of the note at the time it filed its complaint is supported by the fact that a copy of the note endorsed in blank was attached to the complaint when it was filed by [the bank]." *Nationstar Mtge., L.L.C. v. Wagener*, 8th Dist. No. 101280, 2015-Ohio-1289, ¶ 36.

{¶32} Here, a copy of the note endorsed in blank was attached to the complaint, the affiant expressed she had personal knowledge of the business records related to this mortgage loan, and the affiant attested: "At the time of the filing of the complaint in the above-referenced action, and to date [the trustee bank], directly or through an agent, had and has been in possession of the Promissory Note." If Appellants wished to dispute this statement or seek a more specific assurance, discovery could have been conducted via requests for admissions, interrogatories, inspections, or deposition with an accompanying document subpoena. "[T]here is no requirement that the affiant explain the basis of the firsthand knowledge * * *." *U.S. Bank Natl. Assn. v. LaVette*, 8th Dist. No. 101348, 2015-Ohio-765, ¶ 5.

{¶33} These observations also apply to Appellants' next complaint: the affiant described the trustee bank's possession of the note as being "directly or through an agent." Appellants believe this phrase shows the affiant did not know who possessed the note. It should be pointed out the affiant was describing possession of the note from the day the action was filed on July 15, 2014 through the day her affidavit was signed on November 17, 2014, rather than on one specific day. Moreover, we recently held an affidavit attesting to possession "directly or through an agent" was not too vague to support the movant's claim that it possessed a note payable to bearer. *Wells Fargo Bank, N.A. v. Cook*, 7th Dist. Nos. 15CO13, 15CO19, 2016-Ohio-1060, ¶ 34. A plaintiff does not lose constructive and legal possession of bearer paper merely because it was held by an agent on behalf of the plaintiff. *See id.*, citing *U.S. Bank Natl. Assn., as Trustee v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 26.

Constructive possession exists when an agent of the owner holds the note on behalf of the owner * * * consequently, a person is a holder of a negotiable instrument, and entitled to enforce the instrument, when the instrument is in the physical possession of his or her agent.

*Gray*, 10th Dist. No. 12AP-953 at ¶ 25 (the servicing agent for a mortgagee can hold physical possession of the blank-indorsed note on behalf of the plaintiff-bank without destroying the plaintiff bank's possession).

**{¶34}** As the Tenth District pointed out, an official comment to the Uniform Commercial Code provides: "Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, *either directly or through an agent.*" *Gray*, 10th Dist. No. 12AP-953 at ¶ 25 (emphasis added by court), quoting U.C.C. Section 3-201, Comment 1 (1990). *See also Freedom Mtge. Corp. v. Vitale*, 5th Dist. No. 2013 AP 08 0037, 2014-Ohio-1549, ¶ 16 (where the bank had physical possession of the note on the day the complaint was filed and where the note was thereafter placed with various agents of the bank, such as the custodian bank, the servicing agent, and counsel). Applying these holdings, Appellants' argument is overruled.[1]

**{¶35}** Appellants' final argument under this heading deals with the sufficiency of the affidavit concerning the May 13, 2014 letter providing notice of default. The affiant stated, "A Notice of Default letter dated May 13, 2014 was sent to Borrower(s) by first class mail in accordance with the terms of the Promissory Note and Mortgage." *See* Mortgage at ¶ 15 (any notice shall be deemed to have been given to the borrower when mailed by first class mail or when actually delivered if sent by other means); Note at ¶ 6 (any notice will be given by delivering it or by mailing it by

---

[1]Appellants also suggest there is a problem with statement in the affidavit that the trustee bank "is either the original payee of the Promissory Note or the Promissory Note has been duly endorsed" in combination with her later identification of "the Note (Exhibit A) with any applicable endorsements." Contrary to Appellants' suggestion, although the statements sound generic, they do not indicate a lack of possession at the pertinent times. In fact, a statement that a copy of the note "with any applicable endorsements" is attached suggests it is a copy of the original note, as only that note would have the applicable endorsements. The note attached to the complaint and to the affidavit shows the note was endorsed in blank (by the original payee), and the affiant stated the trustee bank had possession. In addition, the original lender executed an assignment of the mortgage loan to the trustee bank in 2011. Regardless, this argument appears to be dependent on Appellants' initial contention that the court cannot view the note (to ascertain it is bearer paper), and Appellants did not argue the alleged significance of this statement to the trial court.

first class mail to the property address listed in note).  The affidavit further asserted that a copy of the demand letter was attached as Exhibit E.  The letter was in fact attached to the affidavit as Exhibit E.

**{¶36}** Appellants claim the affiant failed to attach the business record she relied upon to support the statement that the demand letter was sent by first class mail.  The trustee bank responds that an affiant need not attach every document she used to obtain personal knowledge of the situation reflected in the business records. *Citing, e.g.*, *Bank One, N.A. v. Swartz*, 9th Dist. No. 03CA008308, 2004-Ohio-1986, ¶ 14 ("An affidavit stating the loan is in default is sufficient for purposes of Civ.R. 56, in the absence of evidence controverting those averments.").  *See also U.S. Bank, Natl. Assn. v. Wigle*, 7th Dist. No. 13MA32, 2015-Ohio-2324, ¶ 36 (quoting this portion of the *Swartz* case).  Regardless, we need not address whether the various cited cases extend to the mailing of a demand letter.

**{¶37}** Contrary to Appellants' position, the affiant did attach a business record supporting her statement that the letter was mailed via first class mail.  Exhibit E consisted of three pages.  The first page reflects the contents of the envelope evidencing the mailing of the letter by first class mail to the borrower at the address for the property subject to this foreclosure action.  The document has bar codes, and in the corner reserved for a stamp is a box containing the following information: "PRESORT First-Class Mail U.S. Postage and Fees Paid WSO."

**{¶38}** We previously reviewed a similar submission and found it sufficiently supported an affiant's claim of first-class mailing.  *See Bank of Am., N.A. v. Staples*, 7th Dist. No. 14 MA 109, 2015-Ohio-2094, ¶ 64-67 (concluding the presence of the letter in the business records was not the sole reason the affiant ascertained the letter had been mailed to Appellant).  *See also Bank of New York Mellon v. Bobo*, 4th Dist. No. 14CA22, 2015-Ohio-4601, ¶ 43 (where affiant stated a breach letter was mailed in accordance with the note and mortgage and the face of the letter said it was sent by first-class mail).  Appellant's argument as to evidence of mailing is without merit.  The first issue presented for review is overruled.

NOTICE OF DEFAULT:  TIMING & SENDER

**{¶39}** The second issue presented for review asks: "Whether a genuine issue of material fact remained in dispute regarding Appellee's fulfillment of the condition precedent."

**{¶40}** The notice of default and acceleration provisions of a note and mortgage are conditions precedent to the initiation of a foreclosure action. *See, e.g., Huntington Bank v. Popovec*, 7th Dist. No. 12 MA 119, 2013-Ohio-4363, ¶ 15; *LaSalle Bank, N.A. v. Kelly*, 9th Dist. No. 09CA0067-M, 2010-Ohio-2668, ¶ 13; *First Financial Bank v. Doellman*, 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶ 20. On this topic, the note provides:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Note at ¶ 6(C). *See also* Note at ¶ 6(D) ("Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default later."). Similarly, the mortgage provides:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * * This notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

Mortgage at ¶ 22. This clause further provides that if the default is not cured on or before the date specified in the notice, the lender may require immediate payment of all secured sums without further demand and foreclose the instrument by judicial proceeding. *Id.*

**{¶41}** Appellants' first argument concerning the notice of default is based on their claim the loan had already been accelerated at the time of the May 13, 2014 notice. Appellants explain this was a refiled action, which was originally filed in April 2011. They cite to the complaint in the prior action to show the bank previously declared the entire amount due; Appellants did not submit the complaint as summary judgment evidence. Appellants conclude the May 13, 2014 notice of default was not proper without evidence the loan had been reinstated or decelerated.

**{¶42}** Appellants cite no law in support of this conclusion. The note and mortgage merely require the notice of default to provide a cure date that is not less than 30 days from the date the notice is given, after which time a foreclosure action can be filed. There is no requirement, for instance, that notice of default and acceleration are to be provided if the bank opts not to immediately accelerate and foreclose. Likewise, there is no restriction on sending a later notice even if an earlier notice was sent. Appellants' argument fails to take into account the common situation where: a prior action did not proceed due to a flaw involving the prior notice, in which case the action is dismissed and a new notice is mailed; or a bank provides multiple demand letters hoping to motivate a payment. In sum, there is no issue with timing as the May 13, 2014 notice of default was sent by first-class mail to the borrower at the proper address, the cure date was more than 30 days from the date of the letter, there was no attempt to cure, and the foreclosure action was not initiated until after that date.

**{¶43}** Appellants' second allegation concerns the language in the note providing the "Note Holder" may send notice of default with a cure date to the borrower. *See* Note at ¶ 6(C). *See also* Mortgage at ¶ 22 (providing the "Lender" shall give notice to the borrower prior to acceleration). After disclosing the note can be transferred by the lender, the note explains: "The lender or anyone who takes this

Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'." Note at ¶ 1. Upon reciting that Wells Fargo Bank, N.A. is the originator and servicer of the mortgage loan, Appellants conclude with one argument: "the notice of default was sent by Wells Fargo Home Mortgage an entity with no relationship to the transaction."[2]

**{¶44}** The letterhead return address on the May 13, 2014 notice of default was that of Wells Fargo Home Mortgage, and the end of the notice said it was from Wells Fargo Home Mortgage Default Management Department. It appears Appellants are protesting the failure to specifically use the name Wells Fargo Bank, N.A. However, the name Wells Fargo Bank, N.A. was used twice in the notice of default. The notice was mailed to the borrower at the property address which secured the note via the mortgage. As the trustee bank points out: the notice of default contained Appellants' loan number; Appellants do not indicate confusion as to whom or to where their payments were due; and Appellants were aware Wells Fargo was servicing their loan.

**{¶45}** Notably, if the note and mortgage were sold, notice to the borrower was only required if there was a change in the loan servicer. *See* Mortgage at ¶ 20. Factually, it is not uncommon for a loan servicer to provide the notice of default. *See, generally, U.S. Bank, N.A. v. Christmas*, 2d Dist. No. 26695, 2016-Ohio-236, ¶ 3; *Fannie Mae v. Bilyk*, 10th Dist. No. 15AP-11, 2015-Ohio-5544, ¶ 10 (where sub-servicer accelerated the loan); *U.S. Bank, N.A. v. Lawson*, 5th Dist. No. 13CAE030021, 2014-Ohio-463, ¶ 7, 15 (notice of default letter sent by a third-party vendor of servicing agent); *HSBC Bank USA Natl. Assn. as Trustee v. Lampron*, 5th Dist. No. 10-CA-5, 2010-Ohio-5088, ¶ 9, 14; *Sutton Funding, L.L.C. v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574, ¶ 27 (2d Dist.). In fact, the

---

[2] In setting forth facts before this argument, Appellants briefly point to the custodian bank listed in the prospectus supplement and express a belief the custodian may have possession of the note. They do not connect this statement to their prior statement as to the note's definition of a note holder. The concept of constructive possession was explained supra. (Appellants cite nothing to suggest a trustee bank is not entitled to enforce a mortgage loan if a trust provides a custodian is to physically store the assets.) In any event, whether the trustee bank has standing is a question discussed elsewhere. This section concerns whether the notice of default was proper. More arguments on the trust are presented in the fourth issue presented.

documents attached to the affidavit of Appellants' counsel show Wells Fargo Bank, N.A. was the entity to whom the borrower made the mortgage payments and the entity who could modify the loan and grant indulgences to the borrower. Regardless, Appellants do not clearly construct an argument under this heading specifying, for instance, that the servicer cannot provide the notice of default on behalf of the trustee bank and cite no law in support of such a premise. Appellants' second issue presented is overruled.

AMOUNT IN NOTICE OF DEFAULT

**{¶46}** Appellants' third issue presented for review queries: "Whether Appellee can fulfill a condition precedent by providing a notice of default that demands the wrong amount to cure the default."

**{¶47}** On the topic of the amount disclosed in the notice of default, the note provides the notice must inform the borrower she may be required to pay immediately the full amount of unpaid principal and all interest owed on that amount if she does not "pay the overdue amount" by a certain date. Note at ¶ 6(C). The mortgage provides the notice shall specify the default and the action required to cure the default. Mortgage at ¶ 22.

**{¶48}** The May 13, 2014 notice of default discloses the amount of past due payments as $68,818.33. Appellants posit that, according to the documents submitted by the trustee bank, the amount of past due payments should be $43,898.27; Appellants multiply $1,020.89 (the monthly payment listed in the note) by 43 missed payments. Appellants conclude the amount listed for past due payments is too high by nearly $25,000.

**{¶49}** As the trustee bank responds, Appellants' calculation fails to take into account property taxes and hazard insurance, which are not reflected in a promissory note's recitation of the monthly payment. That is, the note discloses $1,020.89 is the monthly payment toward principal and interest. Note at ¶ 3. On the day the periodic payments are due under the note, the borrower is also obligated to pay to the lender a sum to provide for payment of amounts due for taxes and premiums for insurance. Mortgage at ¶ 3 (defining the "Funds for Escrow Items"). The borrower shall pay

taxes and items attributable to the property which can attain priority over the security instrument. Mortgage at ¶ 4.

**{¶50}** The lender can pay for whatever is reasonable to protect the lender's interest, including paying any sums secured by a lien with priority over the security instrument; any amounts so disbursed shall become additional debt secured by the instrument and shall be payable with interest from the date of disbursement. Mortgage at ¶ 9. Likewise, if the borrower fails to maintain hazard insurance on the property, the lender can obtain coverage at the lender's option and the borrower's expense; any amount so disbursed, shall become additional debt secured by the instrument and shall be payable with interest from the date of disbursement. Mortgage at ¶ 5.

**{¶51}** In the time between the default and the May 13, 2014 notice, $9,030.73 had been advanced by the lender to Appellants' escrow account and then disbursed for property taxes. In fact, Appellants' February 17, 2011 tax payment was satisfied by their escrow account with no advance from the lender; their July 21, 2011 tax payment depleted their escrow account leaving a tax bill of $11.59 for the lender to pay; and, the subsequent property tax bills were wholly paid by the lender as the escrow account had been depleted.

**{¶52}** In this same time period, the lender advanced $17,817 to Appellants' escrow account for hazard insurance payments. (As explained below, payments totaling $26,566 were originally advanced and disbursed for insurance, but $8,749 was refunded, leaving an actual disbursement of $17,817 at the time the notice was provided.) From Appellant's calculation of missed principal and interest payments and the face of the documents provided by the lender on insurance and taxes, there is no indication the notice of default contained an amount of overdue past payments at odds with the borrower's obligations under the mortgage loan. Appellants' blanket argument, which assumes past due payments only include the monthly payment for principal and interest listed in the note without regard to escrow advances, is without merit.

{¶53} Appellants alternatively argue the notice of default contains an improper amount to cure because they perceive a "discrepancy" between the account history attached to the affidavit and the affiant's statement about hazard insurance. The affiant said the trustee bank was owed $17,817 for hazard insurance disbursements through the date of the November 14, 2014 affidavit. After reviewing the account history, Appellants' brief points to two refunds for insurance (credited to Appellants as escrow advance repayments): $7,027 and $1,722 (although Appellants mistakenly say $1,720). These refunds total $8,749. Appellants' brief also lists the disbursements for insurance (made after the lender advanced sums to the escrow account): $9,329; $8,400; $7,027; and $1,810. These disbursements total $26,566.

{¶54} The disbursements of $26,566 minus the refunds of $8,749 equals $17,817, which explains the amount of $17,817 provided in the affidavit as the amount owed for hazard insurance. However, Appellants' brief calculates the amount of disbursements as $24,756. This calculation fails to include the $1,810 disbursement for hazard insurance on April 7, 2014, prior to the notice of default (and prior to the affidavit). Appellants' claimed "discrepancy" is the result of their omission.

{¶55} Appellants' final argument under this heading points to the $1,810 disbursement for hazard insurance on April 7, 2014 and the $8,749 in insurance refunds on April 9, 2014. Appellants acknowledge the bank credited the refunds to their account. Appellants allude to an unspecified overcharge by conjecturing the insurance must actually cost $1,810 per year since this is the amount of the April 7, 2014 disbursement.

{¶56} Appellants' speculative and unclear argument does not demonstrate a genuine issue of material fact as to whether the condition precedent of providing proper notice of default was satisfied. Moreover, in moving for summary judgment, the bank was not required to justify the amount paid for insurance in order to show it provided proper notice of default. When moving for summary judgment, the bank was unaware insurance was an issue. (The answer raised the failure to provide notice as required by the note and mortgage.) Finally, Appellants submitted argument but no evidence on the issue of insurance in response to summary

judgment. For all of these reasons, Appellants' arguments concerning the notice of default are overruled.

<u>POOLING & SERVICING AGREEMENT</u>

**{¶57}** Appellants frame their fourth issue presented for review as follows: "Whether Appellee possessed an interest in the promissory note and mortgage."

**{¶58}** In response to the motion for summary judgment, Appellants attached the affidavit of their attorney. He explained how he obtained the Pooling and Servicing Agreement Prospectus and the Prospectus Supplement associated with the trust. Counsel's affidavit incorporated and attached those documents.

**{¶59}** The documents show U.S. Bank National Association is the trustee of Citigroup Mortgage Loan Trust 2006-WF1. *See* Prospectus Supplement at "Summary" and at "Trustee". It is a New York common law trust established pursuant to a pooling and servicing agreement; it is the "issuing entity." The trust owns the mortgage loans and assets described under the pooling and servicing agreements. The trust acts through its trustee (and trust administrator). *See* Prospectus Supplement at "Issuing Entity." The trustee's responsibilities include accepting delivery of the mortgage loans and acting as fiduciary on behalf of the certificateholders (who own an interest in the trust). *See* Prospectus Supplement at "Trustee" and at "Your certificates will be limited obligations * * *."

**{¶60}** Appellants begin with a principle in New York law providing that a trustee's act is void if it was in contravention of the instrument creating the trust, citing New York Estates, Powers and Trusts Law, Sec. 7-2.4. Appellants contend the trustee bank's receipt of the promissory note and mortgage is void because it was not accomplished in the manner required by the Pooling and Servicing Agreement Prospectus and Prospectus Supplement. Appellants point out the trust's closing date was March 30, 2006. Appellants then rely on the following statement in the Prospectus Supplement:

> Pursuant to one or more sale agreements, the originator [Wells Fargo Bank, N.A.] sold the mortgage loans originated by it, directly or indirectly, without recourse, to the sponsor [Citigroup Global Markets

Realty Corp.]. Pursuant to an assignment and recognition agreement, the sponsor will sell, transfer, assign, set over and otherwise convey the mortgage loans, without recourse, to the depositor [Citigroup Mortgage Loan Trust Inc.] on the closing date. Pursuant to the pooling and servicing agreement, the depositor will sell, transfer, assign, set over and otherwise convey all of the mortgage loans, without recourse, to the trustee, for the benefit of the certificateholders, on the closing date.

The depositor will deliver or cause to be delivered to the trustee, or to a custodian on behalf of the trustee, with respect to each mortgage loan, among other things: the mortgage note endorsed in blank, the original mortgage with evidence of recording indicated thereon and an assignment of the mortgage in blank.

Prospectus Supplement at "Assignment of the Mortgage Loans," pages 102-103.

**{¶61}** Appellants assume the note and mortgage were owned by Wells Fargo Bank, N.A. until it executed the mortgage assignment to the trustee bank on August 26, 2011. Because this was five years after the closing date of the trust and was directly from the originator to the trustee (with no mention of the sponsor or the depositor), Appellants conclude the transaction was void for not complying with the trust documents and the trustee bank has no interest in the note or mortgage.

**{¶62}** However, this is speculative. Initially, we point out the quoted provision of the supplement does not merely refer to a pooling and servicing agreement. It also refers to a sales agreement and an assignment and recognition agreement. These were not submitted, and the significance of these agreements is ignored by Appellants' argument. Moreover, as the trustee bank points out, the depositor was to provide the trustee with the note, the original recorded mortgage, and an assignment of the mortgage *in blank*. The documents do not evidence a requirement that the assignment of the mortgage was to be specifically executed in favor of the trustee by the closing date. In addition, there is no evidence the note was not transferred at the proper time or in the proper manner.

**{¶63}** Furthermore, the documents submitted by Appellants, including the section partially quoted by Appellants, specifically allow for the cure of deficient documentation by the originator. Accordingly, Appellant has not established a genuine issue of material fact concerning a meaningful violation of the trust documents so as to render a mortgage loan outside of the trust for purposes of a foreclosure action against the debtor.

**{¶64}** In fact, the trust documents submitted by Appellants do not define standing to enforce a note in an Ohio court. Rather, they are the prospectus and supplement supplied to the investors. As outlined in the introductory law section, a "person entitled to enforce" an instrument is: (1) the holder of the instrument; (2) a non-holder in possession of the instrument who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument (after establishing such entitlement and that it was lost or destroyed). R.C. 1303.31(A)(1)-(3). A plaintiff may be a "person entitled to enforce" the instrument even though he is not the owner of the instrument or is in wrongful possession of the instrument. R.C. 1303.31(B).

**{¶65}** If the instrument is payable to bearer, then the person in possession of the instrument is the holder of the instrument. *See* R.C. 1301.201(B)(21)(a); former R.C. 1301.01(T)(1)(a). *See also* R.C. 1303.21(B) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). The note is payable to bearer as it was indorsed in blank by Wells Fargo as the original payee. *See* R.C. 1302.25(B) ("When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

**{¶66}** By virtue of its possession of the note endorsed in blank, the trustee bank was the holder of the note and entitled to enforce the note under Ohio law. Where the plaintiff was in possession of a note indorsed in blank, various Ohio courts have utilized this law to describe as *irrelevant* the debtor's arguments on whether there was compliance with the pooling and servicing agreements. *Logansport Savs. Bank, FSB v. Shope*, 10th Dist. No. 15AP-148, 2016-Ohio-278, ¶ 17-18; *Bank of New*

*York Mellon v. Bobo*, 4th Dist. No. 14CA22, 2015-Ohio-4601, ¶ 32; *Bank of New York Mellon v. Antes*, 11th Dist. No. 2014–T–0028, 2014–Ohio–5474, ¶ 40-42; *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 61-62.[3]

**{¶67}** We alternatively note the trustee bank argues the debtor has no "standing" (or is not eligible) to contest whether there was literal compliance with agreements entered between other entities. Appellants recognize there is law against them on the matter of their "standing" to raise this issue. Various courts have concluded a debtor lacks "standing" to challenge whether the transfer of the mortgage loan to the trust complied with the pooling and servicing agreement. *See, e.g., Bank of New York Mellon Trust Co., N.A. v. Unger*, 8th Dist. No. 101598, 2015-Ohio-769, ¶ 7, citing *Bank of New York Mellon Trust Co. v. Unger*, 8th Dist. No. 97315, 2012-Ohio-1950, ¶ 35; *Bank of New York Mellon v. Clancy*, 2d Dist. No. 25823, 2014-Ohio-1975, ¶ 22, 33; *HSBC Bank USA, Natl. Assocs. as Trustee v. Sherman*, 1st Dist. No. C-120302, 2013-Ohio-4220, ¶ 21; *Waterfall Victoria Master Fund Ltd. v. Yeager*, 11th Dist. No. 2012-L-071, 2013-Ohio-3206, ¶ 21.

**{¶68}** Notably, courts in New York have declared debtors have no standing to challenge possession of a note or status as assignee based on the purported non-compliance with pooling and servicing agreements. *See, e.g., Wells Fargo Bank, N.A. v. Erobobo*, 127 A.D.3d 1176, 1178, 9 N.Y.S.3d 312, 314 (2015) (*reversing* the trial court's ruling that the trustee's acceptance of the note and mortgage after the trust's closing date and directly from sponsor were void under the same New York statute cited by Appellants herein), citing *Bank of N.Y. Mellon v. Gales*, 116 A.D.3d 723, 725, 982 N.Y.S.2d 911, 912 (2014). *See also Rajamin v. Deutsche Bank Natl. Trust Co.*, 757 F.3d 79, 86-87 (2d Cir.2012) (affirming district court which held: "The weight of caselaw throughout the country holds that a non-party to a PSA lacks

---

[3] On a subsequent issue concerning the signature on the mortgage assignment, the *Najar* court said the mortgage follows the note, so that if the bank possesses the note indorsed in blank, the mortgage is considered equitably assigned. *Najar*, 8th Dist. No. 98502 at ¶ 65. *See also Thompson v. Bank of America, N.A.*, 773 F.3d 741, 749 (6th Cir.2014) (applying Tennessee U.C.C. law regardless of pooling and servicing agreement and then concluding mortgage follows note).

standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA.")

**{¶69}** Appellants cite cases stating a debtor can raise the legal effects of prior assignments in defending a foreclosure action, noting a debtor should be permitted to protect himself from paying a debt twice. *See, e.g., Slorp v. Lerner, Sampson & Rothfuss*, 587 F.Appx. 249, 254-56 (6th Cir.2014); *BAC Home Loan Servicing L.P. v. McFerren*, 9th Dist. No. 26384, 2013-Ohio-3228, 6 N.E.3d 51, fn. 4. In *Slorp*, the United States Sixth Circuit Court of Appeals held a debtor can challenge a mortgage assignment on the grounds it was not legally effective to pass title. *Slorp*, 587 F.Appx. at 254-56 (in an action against a bank based on allegations of fraud). *See also U.S. Bank Natl. Assn. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 26 (relying on *Slorp* and holding the debtor has a personal stake in challenging whether a person claiming entitlement to enforce a note or a mortgage has been duly transferred or assigned rights).

**{¶70}** Yet, these cases are distinguishable as they did not involve an argument concerning the pooling and servicing agreement. Rather, they involved problems with the note or assignment themselves. *See George*, 10th Dist. No. 14AP-817 (bank submitted contradictory versions of note without satisfactory explanation). On this particular issue, the Sixth Circuit held a borrower lacks standing to have mortgage assignments invalidated due to non-compliance with provisions in a pooling and servicing agreement. *Dauenhauer v. Bank of New York Mellon*, 562 F.Appx. 473, 479-80 (6th Cir.2014) ("Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing.")

**{¶71}** For all of these reasons, Appellant's final argument is overruled. The trial court's judgment is affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.